**ROCK BIT INTERNATIONAL, INC., Plaintiff,**

v.

**SMITH INTERNATIONAL, INC., Defendant.**

**Civil Action No. H–97–1017.**

United States District Court, S.D. Texas, Houston Division.

Sept. 30, 1999.

Jerry W. Gunn, Law Offices of Jerry W. Gunn, Houston, TX, William C. Slusser, Slusser & Frost, L.L.P., Houston, TX, for plaintiff.

Thomas R. McDade, William P. Maines, McDade, Folger, Maines & Lohse, L.L.P., Houston, TX, Jeffrey W. Tayon, Leslie V. Payne, Conley, Rose & Tayon, P.C., Houston, TX, for defendant.

## MEMORANDUM OPINION AND ORDER

HOYT, District Judge.

## I. INTRODUCTION

This is a patent infringement case. The patent at issue, United States Patent No. 5,145,016 (the "016 Patent"), claims the invention of roller cone drill bits comprising secondary cutting structures designed to cut and remove earth formations and promote heat dissipation during the drilling of oil and gas wells. The plaintiff, Rock Bit International, Inc., ("RBI"), alleges that Smith International, Inc. ("Smith") has infringed its patent by making and selling like or similar drill bits such as the F27 drill bits.[1] Smith has

moved for summary judgment on the ground that it sold drill bits containing all the elements claimed in the '016 Patent more than one year before RBI filed its initial patent application. After careful consideration of the parties' briefs and oral arguments, Smith's motion for summary judgment is granted.

## II. THE '016 DRILL BITS INVENTION

### A. The '016 Design

RBI's patent relates to roller cone drill bits designed for drilling oil and gas wells. The '016 Patent claims an improved rotary rock bit having a secondary circumferential row of wear resistant inserts protruding from the gage surface of each rolling cone cutter.[2] The protrusion is designed to create a clearance area for cutting and removing earth formations along side the primary cutters and promote heat dissipation in the bearings. This clearance area is, therefore, a necessary feature of the '016 Patent's claimed invention. As stated above, the clearance area serves several purposes. It provides an area for rock chip formation to move into after cutting, and an area where the frictional heat generated as formations are cut, to be quickly dissipated by drilling fluids. RBI claims that the gage inserts used in its invention have a smaller area of contact with the formation, resulting in high force impact per area of formation contact and increased chip generation.

### B. How The '016 Functions

The function of a rotary cone rock bits is to drill a full gage diameter borehole. Thus, a drill bits' ability to maintain a full gage borehole extends its useful life and reduces the overall expense associated with the drill. Sensitivity to the drill bits' wear is required in order to avoid the increased costs associated with an under gage borehole. An under gage borehole results when the drill bits' cutters have

1. See Appendix, Figure Number 1.

2. See Appendix, Figure Number 2.

worn to the point that the gage of the borehole is not maintained. In other words, the borehole gets smaller as the cutters become worn.

### C. The '016 Distinguished From Other Drill Bits

According to RBI, while drill bits in general have primary and secondary gage inserts on the other "brands," the secondary gage inserts were usually flush with the gage surface or protruded only slightly above it.[3] And, while the slight protrusion might result in incidental cutting, prior art had taught that using the secondary gage inserts to cut formation would put undue stress on the bearings causing it to fail prematurely. Thus, the secondary inserts were primarily designed to prevent wear and erosion of the cone steel or protect the bearings.

RBI sought by its invention to make better use of the secondary gage inserts. By using, the secondary gage inserts as cutters the life of the drill bits is extended, insuring a full gage borehole and reduced expense. RBI claims that the distinction between its invention and prior art is the setting or placement of the secondary bits inserts and their function.

### III. THE CLAIM HISTORY OF THE '016 PATENT

RBI filed its initial patent application with Patent and Trademark office ("PTO") on April 30, 1990. However, the PTO rejected this application in light of prior art. Shortly thereafter, RBI abandoned its first application and filed a second application, calling it a "continuation-in-part" ("CIP") application. Based on the CIP application, the PTO issued its '016 Patent on September 8, 1992.[4] RBI immediately

informed Smith that its '016 Patent had been granted.

In response, Smith claimed that it had commercialized several drill bits with the same type of gage cutting inserts well before April 30, 1990, the date of RBI patent application. When a dispute resulted, RBI filed an application for reexamination with the PTO. The PTO issued to RBI a reexamination certificate on August 13, 1996. Armed with the PTO's latest ruling, RBI filed suit against Smith.

### IV. THE PARTIES' CONTENTIONS

### A. RBI's Contentions

RBI filed the instant patent infringement action against Smith alleging that Smith has manufactured and sold drill bits devices that infringe the '016 Patent. Specifically, RBI claims that Smith's F27 drill bits infringes 13 of the '016 RBI's patent claims. Of these 13 claims, RBI and Smith do not disagree that Claims 1, 6, 11 and 16 are "independent"[5] claims and that the remaining nine claims, Claims 23 and 30–37 are "dependent" claims.

### B. Smith's Contentions

Smith contends that RBI's '016 Patent is invalid on the very basis that it argues infringement. In multiple arguments, Smith asserts that it sold "hundreds of bits identical to those described" in RBI's patent more than a year before the '016 Patent application was filed. Based on this assertion, Smith claims that its' F27 drill bits is "prior art," and that, although the F27 drill bits was not before the PTO when it issued the '016 Patent, the "on sale" bar coupled with the defense concepts of "novelty" and "obviousness," renders the '016 Patent invalid.

---

3. *See* Appendix, Figure Number 1.

4. Smith claims that the PTO examiner, the same examiner who rejected RBI's first application, again raised objections to the claimed inventions because of prior art known to him. However, this examiner was replaced by another examiner who granted the '016 Patent without explanation.

5. A claim is "independent" if it stands alone and does not reference another claim. A claim is "dependent" when it refers to another claim or claims (independent) and is narrower in scope.

Therefore, Smith filed a motion for summary judgment alleging that the '016 Patent is invalid pursuant to the "on-sale" bar provisions of 35 U.S.C. §§ 102(b) [6] and 103. Smith's "on-sale" bar defense is buttressed by its "novelty" and "obviousness" defenses, if as it argues, because the F27 drill bits represents prior art due to prior sales.

## V. STANDARD OF PROOF/BURDEN OF PROOF

 Smith challenges RBI's '016 Patent on a summary judgment standard. For purposes of discussion, the Court's analysis under the summary judgment standard presumes that RBI's patent is valid. *See* 35 U.S.C. § 282. To overcome the presumption of validity, Smith must prove invalidity by clear and convincing evidence. *See In re Mahurkar Hemodialysis Catheter*, 71 F.3d 1573, 1576 (Fed.Cir.1995). Generally, this standard of proof creates disputed fact issues that must be submitted to a jury. However, the failure on the part of the nonmoving party to offer proof concerning an essential element of its case, necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists. *Saunders v. Michelin Tire Corp.*, 942 F.2d 299, 301 (5th Cir.1991).

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party bears the initial burden of informing the Court of the basis for its motion, and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265

(1986). The Court reviews the record by drawing all inferences most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)).

Once the moving party carries its burden, the adverse party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The adverse party must show more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. If an adverse party completely fails to make an offer of proof concerning an essential element of that party's case, on which that party will bear the burden of proof, then all other facts are necessarily rendered immaterial and the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 322–323, 106 S.Ct. 2548.

## VI. SURVEY OF THE CLAIMS OF THE '016 PATENT

Before the issue of infringement and the defense of "on sale" bar may be examined and resolved a survey of the '016 Patent is appropriate. The Court starts with Claim 1. Claim 1 is an independent claim and presents the scope and breath of the invention. It describes the invention's gage inserts at heel row as "wear resistant" and it describes the gage inserts at circumferential groove as a "plurality" of inserts. While Claims 6, 11 and 16 are also independent claims, they are distinguishable in some respects and those distinctions are presented here.

Claims 2, 3, and 4 describe a specific roller cone rock drill by size. Here,

---

6. A person shall be entitled to a patent unless—

 \* \* \* \* \* \*

 (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States.... 35 U.S.C. § 102(b).

the '016 Patent focuses on the protrusion of the gage inserts, the cross sectional area between the inserts, and the diameter of each gage. Claim 5 increases the number of gage inserts in the circumferential groove over the number found in the heel row.

Claim 6 restates Claim 1, and addresses the circumferential heel row with steel teeth inserts as opposed to wear resistant inserts. As in Claims 2, 3, and 4, in relationship to Claim 1, Claims 7, 8 and 9 describe a specific roller cone rock drill by size. The focus here is on the protrusion of the gage insert, the cross sectional area between the insert, and the diameter or size of the insert. Claim 10 increases the number of gage inserts in the circumferential groove over the number in the heel row.

In Claim 11, the secondary cutting structure is presented as comprised of a "circumferential gage row" of gage inserts, while in Claims 1 through 10, the secondary cutting structure is comprised of a "plurality" of gage inserts. A second distinction between the first ten claims and Claim 11 is that in Claims 1 through 10, the inserts are secured in apertures in the "circumferential groove," whereas in Claim 11, the inserts are secured in apertures in the "adjacent gage surface."

In Claims 12 through 14, the '016 Patent repeats the construction patterns and language relationship manifested in Claims 1 through 4 and 5; and 6 through 9 and 10. Distinctively, in Claims 11 through 15, the gage inserts are described as "wear resistant"; and in Claims 16 through 20, the gage inserts are described as steel teeth. Again, in Claims 15 and 20 the number of gage inserts is increased in the circumferential row over those in the heel rows.

Claim 23 is distinguished from Claims 1 through 20 by substituting an "O-ring" seal in the place of an elastomeric cone seal. However, in all instances, whether the seal is by O-ring or an elastomeric cone, it is mounted on a journal bearing.

Claims 30 through 37, like Claim 23 are dependent claims. Like other dependent claims, they add features to the invention that, standing alone, would not constitute an invention. The feature distinctions are: (a) the groove comprises at least 50% of the gage around inserts; (b) the groove has top and bottom groove faces; (c) the groove has an edge defining face sloping into the groove along a top or bottom edge; (d) the clearance area comprises at least 50% of the gage around the inserts; (e) the clearance area comprises a groove having opposing top and bottom edge groove faces; (f) the clearance area comprises a groove having edge defining face sloping into the groove along a top or bottom edge; (g) the clearance comprises a groove in the body of cone cutter; and, (h) the clearance comprises a cone encircling a groove adjacent to the gage inserts. With these parameters, the Court returns to the parties contentions and addresses them in discussion.

## VII. RESTATEMENT OF PARTIES' CONTENTIONS

As stated earlier, Smith contends that RBI's '016 Patent is invalid under the "on sale" bar, in accordance with 35 U.S.C. § 102(b), in that its F27 drill bits was sold more than one year before RBI filed the '016 Patent application. The evidence is undisputed that Smith sold F27 drill bits before April 30, 1990, the day RBI filed its initial patent application. However, whether the sale qualify under the "on sale" bar and, thereby, invalidates RBI's '016 Patent depends upon an interpretation of the claims upon which RBI relies for the patentability of its invention.

To recapitulate, RBI alleges that Smith is infringing '016 Claim numbers 1, 6, 11, 16, 23 and 30–37. It is undisputed that Claims 1, 6, 11 and 16 are independent claims and Claims 23 and 30–37 are dependent claims. Of these claims, Claim 11 is the broadest; and the remaining claims differs in ways already addressed.

Smith argues that the '016 Patent is invalid because of Smith's pre-critical date sale of its F27 drill bits. Smith has prof-

fered undisputed evidence that it sold eighteen (18) F27 drill bits before RBI's critical date of April 30, 1989. According to the evidence, those sales generated approximately $60,000 in revenues.

The issue before the Court is whether the F27 drill bits fully anticipated the claimed invention of the '016 Patent and rendered the '016 Parent invention obvious because of prior art. Smith argues that the F27 drill bits was sold on November 11, 1988, five months before RBI's critical date. Smith argues that its F27 drill bits contains all of the features of claim 11. RBI counters Smith's argument by asserting that Smith's F27 drill bits does not comprise chisel or dome shaped gage inserts, and hence does not anticipate the '016 Patent. This argument is invalidated by the Court's interpretation of the '016 Patent.

## VIII. CLAIM CONSTRUCTION STANDARDS

■ To ascertain the meaning of a claim, the court may consider the claim, the specification, and the prosecution history associated with it. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed.Cir.1995) (en banc) *aff'd,* (517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996)). Expert testimony, including evidence of how those skilled in the art would interpret the claim, may also be relied upon. *Id.* A claim must be read in view of the specification of which it is a part. *Id.* Thus, the patent specification must contains a written description of the invention, which description must enable one of ordinary skill in the art to make and use the invention. For claim construction purposes, the description should act somewhat like a dictionary, explaining the invention and defining the terms used in the claim. In re Vogel, 57 C.C.P.A. 920, 422 F.2d 438, 441, 164 USPQ 619, 621 (1970).

The Court should also consider the patent's prosecution history, if it is in evidence. *Graham v. John Deere Co.,* 383 U.S. 1, 33, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). The construction of the patent is confirmed through the avowed understand-

ing of the patentee expressed by him or on his behalf, at the time that the patentee's application was pending. *Markman,* 52 F.3d at 980.

## IX. INVALIDATION BY "ON SALE" BAR

■ With these parameters, the Court turns to Smith's "on sale" defense. The ultimate determination that a product was placed "on sale" under section 102(b) is a question of law, based on underlying facts. *KeyStone Retaining Wall Systems, Inc. v. Westrock, Inc.,* 997 F.2d 1444, 1451 (Fed.Cir.1993). A claimed invention is considered to be on sale, within the meaning of § 102(b), if more than one year before the filing date to which the claim is entitled (the critical date), two conditions are satisfied. *See Pfaff v. Wells Electronics, Inc.,* 525 U.S. 55, 119 S.Ct. 304, 311, 142 L.Ed.2d 261 (1998). First, the product must be the subject of a commercial offer for sale. *Id.* Second, the invention must be ready for patenting. *Ibid.*

The aspect of "ready for patenting" prior to the critical date may be satisfied by a showing that the product was reduced to practice. The F27 drill bits, which had been offered for sale was also "ready for patenting" if patenting were possible. However, the Court is of the view that neither the F27 nor the '016 are patentable. *See Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,* 339 U.S. 605, 607, 70 S.Ct. 854, 94 L.Ed. 1097 (1950). Therefore, the first determination in the § 102(b) analysis is whether the F27 drill bits meets each of the limitations of the '016 Patent and, thus, is an embodiment of the '016 Patent.

In this case, Claim 11 sets forth the broadest claim. And, if the F27 drill bits offered for sale inherently possessed each of the claim limitations in the '016 Patent, then the F27 drill bits was on sale, whether RBI recognized that its invention possessed the claimed characteristics or not. *See In re King,* 801 F.2d 1324, 1326, 231 USPQ 136, 138 (Fed.Cir.1986).

Inherency may be established by determining the function of the F27 drill bits as it relates to the '016 Patent. The mere fact that it might appear by sight to have the same characteristics alone is insufficient to establish inherency. *See Continental Can Co. v. Monsanto Co.*, 948 F.2d 1264, 1269, 20 USPQ2d 1746, 1749 (Fed. Cir.1991). Thus, if in the function of the F27 drill bits the same job is accomplished, then the offer for sale of the F27 drill bits would necessarily result in achievement of each of the claim limitations. *Id.*

## X. DISCUSSION OF CLAIM 11 OF THE '016 PATENT

The Court begins its inquiry with Claim 11's language. The language of Claim 11 provides:

An improved roller cone rock drill bit comprising: a plurality of cone cutters; each cone cutter being rotatably mounted on journals with sliding bearing surfaces and being sealed by an elastomeric cone/journal seal;

each cone cutter being further adapted to drill the bottom of a borehole and being characterized by the cooperative operation of primary and secondary cutting structures;

the primary and secondary structure being functionally effective to maintain a full gage borehole during rotary drilling. The primary cutting structure comprising a circumferential heel row of wear resistant inserts for cutting the corner of a borehole at substantially gage diameter;

a gage surface adjacent to the heel row; the secondary cutting structure comprising a circumferential gage row of wear resistant gage inserts for cutting the gage diameter in the sidewall of the borehole, the inserts being rigidly secured in apertures in the adjacent gage surface and protruding from the gage surface;

and a clearance area between the gage surface and the gage inserts being func-

tionally effective for chip formation, chip removal and heat dissipation.

### A. Plurality of Cone Cutters Comparison—'016 and F27 Drill Bits

The first element of Claim 11 requires a "plurality of cone cutters." The F27 drill bits has three rolling cones and, therefore, satisfy this element.[7] Additionally, Smith submitted drawings of the F27 drill bits establishing that the F27 drill bits contains a journal bearing and an elastomeric cone/journal seal, thus, satisfying element two of Claim 11.

The third element of Claim 11 requires that each cone cutter be adapted to drill the bottom of a borehole. Clearly, the F27 drill bits has chisel shaped inserts protruding well above the cone steel. These inserts are the primary cutters and are designed to drill the bottom of a borehole.

### B. Function of Secondary Cutters—'016 and F27

The fourth element of Claim 11 is particularly germane to the '016 drill bits because it requires that each cone cutter be characterized by the cooperative operation of primary and secondary cutting structures such that, a full gage borehole is maintained during drilling. The photographic evidence depicts the F27 drill bits fitted with a gage curve similar to the gage curve of the '016 Patent.[8] A gage curve is a design tool used to insure that the cutters of a rolling cone actually cut to the designed diameter. An examination of the F27 drill bits reveals that both the primary and secondary inserts extend to gage. Hence, the Court concludes that the primary and secondary cutters operate cooperatively and function to maintain a full gage borehole.

### C. Heel Row Inserts Comparison—'016 and F27

Element five of Claim 11 requires that there be primary cutting structures com-

---

7. *See* Appendix, Figure Number 1.

8. *See* Appendix, Figure Number 2.

prising a circumferential heel row of wear resistant inserts for cutting the corner of a borehole at substantially gage diameter. The primary cutters on the F27 drill bits comprise a circumferential heel row of wear resistant inserts. These inserts are located on the corners of the rolling cone and extend to the gage curve, which is representative of the borehole wall. Hence, the F27 drill bits primary cutters are set to cut the corners of a borehole at substantially gage diameter.

### D. Comparison of Location of Heel Row Inserts—'016 and F27

Element six of Claim 11 requires a gage surface adjacent to the heel row. The gage surface of the F27 drill bits surrounding the secondary cutter is clearly adjacent to the heel row inserts. Element seven of Claim 11 requires that the secondary cutting structure comprise a circumferential gage row of wear resistant inserts for cutting the gage diameter in the sidewalls of the borehole, the inserts being rigidly secured in apertures in the adjacent gage surface and protruding from the gage surface. The photographic evidence supports the conclusion that the F27 drill bits secondary gage cutters comprise a circumferential gage row of wear resistant gage inserts. The same photographs show that the secondary cutters are secured in the gage surface and protrude from the gage surface to the sides of the borehole, which in this case, is represented by the gage curve.

### E. Does F27 Drill Bits Show A Functional Clearance Area?

Element eight of Claim 11 requires that the '016 drill bits contain a clearance area between the gage surface and the gage inserts; thus, permitting a function that is effective for chip formation, chip removal, and heat dissipation. The '016 Patent specifications require that gage inserts protrude above most of the cone surface adjacent to them to provide the clearance area necessary for the inserts' function. For medium bits, such as the F27 drill bits, (greater than 6¾ inch diameter but less than 12¼ inch diameter) the protrusion must be at least 0.05 inches. Smith's drawings of the F27 drill bits show that the gage row inserts protrude 0.05 inches above the gage surface, thus, producing a gap between the borehole walls and the top of the gage insert identical to that provided by the '016 Patent.

The '016 Patent states that the gap between the borehole walls and the top of the gap must be 0.03 inches or less for medium bits. The F27 drill bits gage insert calls for a gap of 0.002 inches, thus, the F27 drill bits gap falls within the range stated by the '016 Patent for medium bits. The total clearance for the F27 drill bits is 0.052 inches and is, therefore, identical in clearance to that called for in the '016 Patent. Hence, the F27 drill bits are "functionally effective for chip formation, chip removal and heat dissipation," and includes all of the features presented in Claim 11 of the '016 Patent.

█ The Court concludes that '016 Patent, as presented in Claim 11, is invalid because the F27 drill bits was marketed and sold at least one year before RBI filed its initial patent application for the '016 Patent. Also, the Court concludes that the remaining independent patent claims, that differ in materials used and the degree of protrusion of the gage inserts from Claim 11 by adding distinctive features to the same basic drill bits, are captured by this holding. Standing alone, none of these distinctions is patentable as an invention. Consequently, these claims cannot validate the '016 Patent as an invention because the basis upon which the distinctions stand is invalid. Thus, the remaining claims are held invalidated by this Court's findings and holdings as to Claim 11. By way of example, Claims 6 and 16 state that the primary cutters are steel teeth instead of the wear resistant inserts called for in Claim 11. Claims 1, 6 and 30–37 state that a "groove" clearance area is required instead of the open clearance area called for in Claim 11. However, these are differences that do not enjoy a distinction as the '016 Patent functions.

## XI. THE '016 LACKS NOVELTY AND IS OBVIOUS

Smith also claims that the '016 Patent lacks "novelty" and is "obvious" in light of the sale of the F27 drill bits in the market. The burden rests on Smith to show by "clear and convincing evidence"that its sale of the F27 drill bits renders the '016 Patent obvious and lacking in novelty. *See Monarch Knitting Mach. Corp. v. Sulzer Morat Gmbh,* 139 F.3d 877, 880 (Fed.Cir.1998). The evidence before the Court is undisputed on this point. Smith need not show that the F27 drill bits art was presented to the PTO, but that the claims of the '016 Patent are indistinguishable in function and appearance from the features of the F27 drill bits. *See* 35 U.S.C. §§ 102 and 103.

Section 103(a) provides that a patent is unobtainable where the subject matter of the patent and the prior art are so closely aligned that as a "whole" the invention was obvious at the time the invention was made. Obviousness is tested by the person of ordinary skill in the art test. *Id.; Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,* 489 U.S. 141, 156, 109 S.Ct. 971, 103 L.Ed.2d 118 (1989). A person of ordinary skill in the art would find that the F27 drill bits and the '016 Patent are indistinguishable in function and appearance.

## XII. CONCLUSION

It is the Court's view, having examined the evidence that the '016 Patent fails both, the test of novelty and that of obviousness in light of prior art or the prior sale. This conclusion. is based on the Court findings and conclusions associated with Claim 11 of the '016 Patent. Accordingly, the Court holds that the '016 Patent is invalid pursuant to § 102(b). The defendant is entitled to summary judgment relief, as a matter of law.

It is so ORDERED.

676

## Figure Number One (1)

**Photograph of the F27 Drill Bits.**

## Figure Number Two (2)

**Comparison of RBI's '016 Patent features and Smith's F27 Drill Bit ('016 Patent on Left)**